Opinion issued December 4, 2003





















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-00859-CR
____________
 
NATHAN NEIL MCKINNEY, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 339th District Court
Harris County, Texas
Trial Court Cause No. 877895
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Nathan Neil McKinney, guilty of capital murder. The
State did not seek the death penalty, and the trial court assessed appellant’s
punishment at confinement for life. In five points of error, appellant contends that
the trial court erred in denying his motion to suppress evidence and the evidence was
legally and factually insufficient to support his conviction. We affirm.
Facts
          Michelle Parson, appellant’s girlfriend, testified that, on the night of April 7,
2001, appellant sold “tabs” of ecstasy to Nathan Pratt, the complainant, for $1,000. 
After appellant delivered the narcotics to the complainant and began counting the
proceeds from his sale, he realized that the complainant had given him counterfeit
money. Appellant immediately telephoned the complainant and arranged to meet him
at a nearby gas station. Appellant, with Parson, went to the gas station, but the
complainant never showed up. As a result, appellant was “real[ly] angry” and he
stated that he had to “get a hold” of the complainant.
          After they were “stood up,” Parson contacted Michelle Roden, a friend of the
complainant. Appellant and Parson then, at around 1:30 a.m., went to Roden’s house,
where they found several people, including Roden, Ashley Daulton, and Jonathan
Jones, having a party. Appellant told everyone what had happened, and then he
devised a plan to lure the complainant to Roden’s house so that he could recover “the
tabs or the money.” Roden telephoned the complainant and invited him over to her
house. After the complainant arrived, Jones invited him outside to “smoke a joint.” 
The complainant accepted the invitation, and once they were outside, appellant
jumped out from behind some bushes and pointed his shotgun at the complainant’s
head. Appellant then walked the complainant over to appellant’s car, shoved him into
the back seat, and instructed Parson to drive them to Birnamwood Road. Along the
way, appellant ordered the complainant to empty his pockets, but he was only
carrying two counterfeit $20 bills.
          When they arrived at Birnamwood Road, Parson parked near some “woods,”
and appellant immediately got out of the car. He pointed his shotgun at the
complainant, “got him out” of the car, and then walked him into “the woods.” At this
point, Parson telephoned appellant’s best friend, Kathy Kalich, and told her what was
happening. While the two women were talking on the telephone, they both heard a
gun shot. Parson abruptly “hung up” on Kalich and then she heard another gun shot. 
About five minutes went by, and then appellant returned to the car carrying his
shotgun. He told Parson to “move over,” and then he got behind the wheel of the car
and drove them back to their apartment.
          Bobbie Pratt, the complainant’s mother, testified that, on April 8, 2001, she
telephoned the Montgomery County Sheriff’s office and reported her son missing. 
Twelve days later, the Montgomery County Sheriff’s office turned the case over to
the Harris County Sheriff’s office.
          Harris County Sheriff’s Detective F. Barnes testified that he was assigned to
investigate the complainant’s disappearance. During his investigation, he interviewed
Michelle Roden, Ashley Daulton, and Johnathan Jones. From these interviews,
Barnes determined that the complainant had been kidnapped and that appellant and
Parson were his primary suspects. After consulting with the Harris County District
Attorney’s office, Barnes obtained a warrant to search appellant’s apartment and
arrest appellant and Parson for aggravated kidnapping.
          Harris County Sheriff’s Detective W. Kuhlman testified that, on April 26,
2001, he and Detective Barnes executed the search and arrest warrant at appellant’s
and Parson’s apartment. During their search of the apartment, the Detetctives found
a “pistol grip pump” shotgun, a “scoped” .22 caliber rifle, and a small “tote bag”
containing .12 gauge shotgun shells and .22 caliber ammunition. Following the
search, the detectives arrested appellant and Parson for aggravated kidnapping and
transported them to the sheriff’s office.
          At the sheriff’s office, Detective Kuhlman questioned Parson concerning “the
whereabouts” of the complainant. Parson confessed to her role in kidnapping the
complainant and she took Kuhlman and another deputy to “the woods” on
Birnamwood Road. In the “the woods,” Kuhlman found a decapitated body, a skull
with a stick in it, one “spent” .22 caliber casing, and a couple of “spent” .12 gauge
casings.
          Matthew Clements, a forensic firearm and tool mark examiner with the Harris
County Sheriff’s office, testified that the shotgun pellets found in the complainant’s
body were identical to the shotgun pellets found in the brand of ammunition used by
appellant. However, Clements was unable to determine whether the shotgun pellets
found in the complainant’s body were fired from appellant’s shotgun because, unlike
ammunition fired from rifles, shotgun pellets never come into contact with the barrel
of a shotgun so “[there are] never any markings left on the pellets from the barrel.”
          Kathy Kalich testified that, while appellant was in jail, he wrote her several
letters instructing her to tell the police that Ross Saylor and his brother killed the
complainant. Furthermore, appellant told Kalich in one of his letters that she needed
to know the details of his story “inside and out” so that “[his] story [would be]
believable.”
          Appellant testified that he kidnapped the complainant, but that Ross Saylor
forced him to do it. Moreover, he testified that, on the night in question, he met up
with the Saylor brothers in “the woods,” they told him to leave, and then they shot the
complainant as appellant walked away.
          Ross Saylor testified that he never pointed a handgun at appellant’s head and
never threatened to kill him. He also stated he was not in “the woods” that night. 
Furthermore, Saylor testified that appellant admitted to him that appellant walked the
complainant into “the woods” and shot him twice.
Motion to Suppress Evidence
          In his first point of error, appellant argues that the trial court erred in denying
his motion to suppress evidence found in the search of his and Parson’s apartment
because the affidavit supporting the search and arrest warrant “was insufficient to
state probable cause that appellant had engaged in the alleged offense, since it was
based on information supplied by a party to the same offense.”
          We review a trial court’s ruling on a motion to suppress evidence using the
bifurcated standard of review set forth in Guzman v. State, 955 S.W.2d 85 (Tex. Crim.
App. 1997). We give almost total deference to a trial court’s determination of
historical facts that depend on credibility choices, but we review de novo a trial
court’s application of the law of probable cause. Wilson v. State, 98 S.W.3d 265, 271
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d). In conducting our de novo review
in this case, we give great deference to the magistrate’s decision to issue the search
and arrest warrant and determine, whether, considering the totality of the
circumstances, the magistrate had a substantial basis for determining that there was
probable cause. Id.
          A search warrant may not issue unless it is supported by an affidavit setting
forth the following sufficient facts to establish probable cause: (1) that a specific
offense has been committed; (2) that the specifically described property or items that
are to be searched for or seized constitute evidence of that offense or evidence that
a particular person committed that offense; and (3) that the property or items
constituting evidence to be searched for or seized are located at or on the particular
person, place, or thing to be searched. Tex. Code Crim. Proc. Ann. art. 18.01(c)
(Vernon Supp. 2003). We examine the four corners of the affidavit to determine
whether probable cause exists. Wilson, 98 S.W.2d at 270-71. However, reasonable
inferences may be drawn from the affidavit, and the affidavit must be interpreted in
a common sense and realistic manner. Id. at 271.
          Appellant asserts that Detective Barnes, in his affidavit, relied solely on
information obtained from Johnathan Jones to establish that appellant kidnapped the
complainant. Appellant contends that any information that Barnes obtained from
Jones was “insufficiently [sic] reliable” because Jones participated in the kidnapping. 
Therefore, appellant argues that Barnes was required to include corroborating
information in his affidavit to establish probable cause.
          To support his corroboration argument, appellant relies on Roeder v. State, 768
S.W.2d 745 (Tex. App.—Houston [1st Dist.] 1988, pet. ref’d). In Roeder, this Court
observed that, under Colorado law, a co-participant in a crime is not a reliable
informant absent additional factors demonstrating credibility. Id. at 751. Thus, we
held that an uncorroborated co-participant’s confession implicating another co-participant was not sufficient to establish probable cause as to the other participant. 
Id. at 752. However, this is not the standard in Texas. Instead, when a Texas search
warrant affidavit specifies a named informant as supplying the information upon
which probable cause is based, the affidavit is sufficient if it is sufficiently detailed
to suggest direct knowledge on the informant’s part. Matamoros v. State, 901 S.W.2d
470, 478 (Tex. Crim. App. 1995).
          Detective Barnes’s affidavit was sufficiently detailed to show that Jones had
direct knowledge that appellant kidnapped the complainant while using a shotgun. 
The affidavit provides, in pertinent part, as follows:
That your affiant obtained a copy of Jones’ statement from Kuhlman and
that statement reflected that on a weekend night about two weeks ago
from April 25, 2001, Jones was at the home of Michelle Roden. While
there, he saw [appellant] point a shotgun at the head of [the
complainant] and force[] [him] to get into a car; further, that [the
complainant] was holding his hands in the air and acting as if he did not
want to get into the car. Jones stated that he saw [appellant] sitting in
the backseat of the car with [the complainant] as it was being driven
away by Michelle Parson. Jones described the shotgun as being a pump,
black in color, with a short barrel, [and] a pistol grip handle.

This portion of Barnes’s affidavit contains both a detailed description of the shotgun
used in the kidnapping and the events of the kidnapping itself. Given the detail
contained in the affidavit, we conclude that the magistrate had a substantial basis for
finding probable cause to issue the search and arrest warrant. Accordingly, we hold
that the trial court did not abuse its discretion in denying appellant’s motion to
suppress evidence found during the search of his and Parson’s apartment.
          We overrule appellant’s first point of error.
Legal Sufficiency of the Evidence
          In his second and fourth points of error, appellant argues that the evidence was
legally insufficient to support his conviction because he proved “the defense of duress
by a preponderance of the evidence” and the State failed to prove that he or any party
caused the complainant’s death.
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine if any rational fact finder could have
found the essential elements of the offense beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Although our analysis considers all
evidence presented at trial, we may not reweigh the evidence and substitute our
judgment for that of the fact finder. Id.
          A person commits capital murder if he intentionally commits murder in the
course of committing or attempting to commit kidnapping. Tex. Pen. Code Ann. §
19.03(a)(2) (Vernon 2003). Duress is an affirmative defense that applies when an
accused engaged in the proscribed conduct because he was compelled to do so by
threat of imminent death or serious bodily injury to himself or another. Id. § 8.05(a)
(Vernon 2003). When determining the sufficiency of the evidence to disprove a
defendant’s statutory defense, the State is not required to affirmatively produce
evidence that refutes a defendant’s statutory defense, but rather to prove its case
beyond a reasonable doubt. Saxton v. State, 804 S.W.2d 910, 913 (Tex. Crim. App.
1991).
          In regard to his argument that the State failed to prove that appellant or any
party caused the complainant’s death, appellant asserts that “there were no
eyewitnesses to the alleged shooting” and the State was unable to establish that “the
decomposed body found in the woods was the body of the complainant.”
          However, Parson testified that she and appellant kidnapped the complainant
from Roden’s house, drove him to Birnamwood Road, and appellant walked him into
“the woods.” Parson heard two gunshots, and, within a few minutes, appellant
returned to the car without the complainant. Parson also testified that, as she and
appellant were booked into jail, appellant told her, “I did it.” Detective Kuhlman
testified that he found a decapitated body and a skull in the same general area where
the complainant was last seen alive. Moreover, Matthew Clements testified that the
shotgun pellets recovered from the body found in “the woods” were identical to the
shotgun pellets found in the brand of ammunition used by appellant. In light of this
evidence, a rational fact finder could have found the essential elements of capital
murder beyond a reasonable doubt.
          In regard to his affirmative defense, appellant asserts that he proved duress by
a preponderance of the evidence because he testified that he kidnapped the
complainant and took him to the woods “out of fear that Ross Saylor would shoot
him.” Appellant further asserts that Saylor’s testimony that he did not threaten
appellant, “under all the facts and circumstances of this case,” was simply not
“credible.”
          However, as the exclusive judges of the facts, the credibility of the witnesses,
and the weight to be given their testimony, a jury may believe or disbelieve all or any
part of a witness’s testimony. McKinny v. State, 76 S.W.3d 463, 468-69 (Tex.
App.—Houston [1st Dist.] 2002, no pet.). The jury’s verdict of guilt in this case was
an implicit rejection of appellant’s testimony that he acted under duress. See Saxton,
804 S.W.2d at 914. We will not substitute our judgment for that of the fact finder.
          Because the State established the essential elements of capital murder beyond
a reasonable doubt and the jury had ample evidence to reject appellant’s affirmative
defense, we hold that the evidence was legally sufficient to support appellant’s
conviction.
          We overrule appellant’s second and fourth points of error.
Factual Sufficiency of the Evidence
          In his third and fifth points of error, appellant argues that the evidence was
factually insufficient to support his conviction because he proved “the defense of
duress by a preponderance of the evidence” and the State failed to prove that he or
any party caused the complainant’s death.
          We review the factual sufficiency of the evidence by examining all of the
evidence neutrally and asking whether the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence
in the jury’s determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).
          In regard to his assertion that the State failed to prove that appellant or any
party caused the complainant’s death, appellant reiterates that “there were no
eyewitnesses to the alleged shooting of the complainant” and “the State was unable
to establish that the badly decomposed body found in the woods” belonged to the
complainant.
          As we previously noted, Parson testified that she and appellant kidnapped the
complainant, drove him to Birnamwood Road, and appellant walked him into “the
woods.” Parson heard two gunshots, and, within a few minutes, appellant returned
to the car without the complainant. Moreover, while being booked into jail, appellant
told Parson, “I did it.” Again, Detective Kuhlman found a decapitated body and a
skull in the same general area where the complainant was last seen alive, and
Matthew Clements testified that the shotgun pellets recovered from the body found
in “the woods” were identical to the shotgun pellets found in the brand of ammunition
used by appellant. After reviewing all of the evidence neutrally, we cannot conclude
that the proof of appellant’s guilt was so weak as to undermine confidence in the
jury’s determination or that the proof of appellant’s guilt was greatly outweighed by
contrary proof.
          In regard to his affirmative defense, appellant again asserts that he proved
duress by a preponderance of the evidence because he testified that “Ross Saylor
threatened to shoot him if he did not bring the complainant to the woods.” Appellant
also reiterates that Saylor’s testimony that he did not threaten appellant “was simply
not credible.”
          Here, Saylor testified that he did not in anyway threaten to kill appellant and
that appellant admitted to him that appellant walked the complainant into “the woods”
and shot him twice. Moreover, Kathy Kalich testified that appellant instructed her
to lie for him and tell the police that Saylor and his brother killed the complainant.
          Again, what weight to give contradictory testimonial evidence is within the
sole province of the jury as it turns on an evaluation of credibility and demeanor. 
Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). Thus, the jury was
free to believe or disbelieve all or any part of appellant’s or Saylor’s testimony. A
court of appeals must show deference to such a jury finding. Id. at 409. A jury
decision is not manifestly unjust merely because the jury resolved conflicting views
of the evidence in favor of the State. Id. at 410.
          Accordingly, we hold that the evidence was factually sufficient to support
appellant’s conviction.
          We overrule appellant’s third and fifth points of error.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Taft, Jennings, and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).